<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MICHAEL LLOYD, | Civil Action No. 19-12123 (SRC) |
| Plaintiff, |  |
|  | **OPINION** |
| v. |  |
| COMMISSIONER OF SOCIAL SECURITY, |  |
| Defendant. |  |

**<u>CHESLER, District Judge</u>**

This matter comes before the Court on the appeal by Plaintiff Michael Lloyd ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for disability benefits, alleging disability beginning January 15, 2015. A hearing was held before ALJ Thomas J. Sanzi (the "ALJ") on November 15, 2017, and the ALJ issued an unfavorable decision on June 4, 2018, finding that Plaintiff had not been disabled during the period in question. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of June 4, 2018, the ALJ found that, at step three, Plaintiff did not meet or

equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform the full range of work at all exertional levels, with certain non-exertional limitations, including a limitation to simple and routine tasks. At step four, the ALJ also found that Plaintiff has no past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on a number of grounds, but this Court need only reach the argument that points to reversible error: the ALJ's determination at step three, that Plaintiff does not meet the requirements of Listing 12.05B, is not supported by substantial evidence.

Listing 12.05 states:

12.05   Intellectual disorder (see 12.00B4), satisfied by A or B:

A. Satisfied by 1, 2, and 3 (see 12.00H):

> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>
> 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

>B. Satisfied by 1, 2, and 3 (see 12.00H):
>
>>1. Significantly subaverage general intellectual functioning evidenced by a or b:
>>
>>a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>
>>b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>>
>>2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>>
>>a. Understand, remember, or apply information (see 12.00E1); or
>>
>>b. Interact with others (see 12.00E2); or
>>
>>c. Concentrate, persist, or maintain pace (see 12.00E3); or
>>
>>d. Adapt or manage oneself (see 12.00E4); and
>>
>>3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

At step three, the ALJ found that Plaintiff did not meet the requirements of Listing 12.05B. (Tr. 17-19.) In short, the ALJ found that Plaintiff satisfied the first and third components of Listing 12.05B, but not the second, regarding deficits in adaptive functioning. (Tr. 19.) What follows is the ALJ's analysis of Listing 12.05B(2) in its entirety:

> However, he did not demonstrate significant deficits in adaptive functioning. There is a statement in a cognitive test report that the claimant's adaptive function was below average (Exhibit 4F, 47). This report states that the claimant's attention span was adequate and there were no overt signs of excessive distractibility (Exhibit 4F, 49). He was also noted to have some impairment in adaptation in a recent psychological evaluation (Exhibit 6F, 2). The claimant stated he "has a hard time getting outside and figuring out what to do" (Exhibit 6F, 4). However, this note also states that the claimant had no trouble with

3

>personal care; he could sometimes go shopping; and he had no issues with housework (Id). His ability to perform activities of daily living reported in the consultative examination also shows that his adaptation was not limited to marked or extreme levels (Exhibit 2F). Again, I also note that there is no evidence that he was hospitalized for any of his mental impairments, highlighting that he was able to function in a day to day capacity with conservative treatment. Therefore, I do not find that the claimant meets the criteria of paragraph B of listing 12.05.

(Tr. 19.)   The Court notes first that this is insufficient as an explanation of the determination that Plaintiff fails to meet the requirements of Listing 12.05B(2).   The express language of Listing 12.05B(2) presents four areas for evaluation, and states that extreme limitation in one area, or marked limitation in two areas, must be found.   This requires an analysis of all four areas.   The ALJ did not articulate an analysis for each of the four areas.   Rather, the ALJ's analysis is, at best, a light and vague pass over some of the areas mixed together.   Only one sentence in this analysis addresses the determination of whether Plaintiff shows marked or extreme limitations: "His ability to perform activities of daily living reported in the consultative examination also shows that his adaptation was not limited to marked or extreme levels."[1]   The analysis, as

---

[1] This appears to relate to area (d), "adapt or manage oneself," since there is no logical connection to any of the other three areas.   The Listing for that area states: "Adapt or manage oneself (see 12.00E4)."   Listing 12.05B(2)(d).   The cited section, 12.00E4, defines "adapt or manage oneself" as follows:

>This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being *in a work setting*. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable *work performance*; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a *work setting*; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

Listing 12.00E4 (emphases added.)   The ALJ cited no evidence about Plaintiff's functioning in a work setting because the record contains none: it is undisputed that Plaintiff has never worked.

reported in the written decision, fails to sufficiently explain the determination that Plaintiff does not manifest marked or extreme limitations in any of the four areas.

Listing 12.00F2 defines the five-point scale used in Listing 12.05B(2) and states, in relevant part:

> c. *Moderate limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
> d. *Marked limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
> e. *Extreme limitation*. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

Plaintiff contends that additional guidance is provided in the Regulations, which define "extreme" and "marked" levels of limitation in 20 C.F.R. § 416.926a(e), and the Commissioner does not dispute this. Plaintiff's contention is supported by the fact that the Program Operations Manual System (POMS) for the Social Security Administration contains a section titled, "How We Define Marked and Extreme Limitations (Section 416.926a(e))." SSA POMS DI 25225.020. The Regulation states, in relevant part:

> (2) Marked limitation.
>    (i)   We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."   It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
> . . .
> (3)   Extreme limitation.
>    (i)   We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to

---

The ALJ's determination that Plaintiff does not show marked or extreme limitations in area (d) is supported by no evidence.

>independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked."   "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e).[2]   As already discussed, the ALJ's analysis contained only one statement that expressly referenced marked or extreme limitations, and that one statement is based on an incorrect understanding of Listing 12.05B(2)(d) and fails to refer to Listing 12.00E4. As for the rest of the ALJ's analysis, the Court concludes that the ALJ's statement of the relevant evidence does not constitute substantial evidence supporting the determination that Plaintiff did not meet the requirements of Listing 12.05B(2), applying the definitions stated in Listing 12.00F2 and 20 C.F.R. § 416.926a(e).

The Commissioner, in opposition, argues that the ALJ's analysis is sound and supported by substantial evidence.   This is not persuasive.   The Commissioner's arguments do not address the definition of the terms "marked" and "extreme" in either Listing 12.00F2 or 20 C.F.R. § 416.926a(e).   The Commissioner argues, instead, only that various pieces of cited evidence support the ALJ's determination that the limitations in all the areas were moderate or less severe, with no consideration of the question of the definition of "moderate" in the context of Listing 12.05B(2).   The Commissioner's brief simply does not engage with the scheme for assessing severity of limitations stated in the Listing 12.00F2 or the Regulations.

---

[2] The Court notes that both Listing 12.00F2(d) and 20 C.F.R. § 416.926a(e)(2)(i) define a marked impairment as occurring when functioning is "seriously limited."

This Court thus finds that the ALJ's determination, at step three, that Plaintiff does not meet the requirements of Listing 12.05B, is not supported by substantial evidence. The case will be remanded to the Commissioner for further proceedings. On remand, the Commissioner should carefully consider the evidence of record regarding the level of impairment for each of the four areas of adaptive functioning listed in Listing 12.05B(2). The record before this Court certainly shows the potential to support a determination of marked impairment in at least two of the areas. As Plaintiff argues, lifelong intellectual deficits tend to be static, and IQ testing has shown that Plaintiff has consistently scored below 70. Dr. London tested Plaintiff and reported: "WAIS-IV data indicate mildly disabled intellectual functioning, based on a Full Scale IQ of 63 (1st national percentile)." (Tr. 406.) The first percentile is a level which other courts have found to be a marked impairment. See, e.g., Slusser v. Apfel, 85 F. Supp. 2d 634, 637 (W.D. Va. 2000) ("The court takes notice of the fact that a score within the first percentile represents at least two standard deviations below the norm for the test. Indeed, this court has consistently held that performance within the first percentile establishes the existence of a marked limitation.")

As Plaintiff argues, the evidence of record regarding Plaintiff's ability to interact with others does not seem to square with the ALJ's assessment of that area. In part, this may be due to the fact that the ALJ appears to have overlooked the guidance within the Listings as to how to evaluate this area. Listing 12.05B(2)(b) states: "Interact with others (see 12.00E2)." This refers to section 12.00E2, which states:

> Interact with others (paragraph B2). This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and

7

> challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. These examples illustrate the nature of this area of mental functioning.

The Court observes, first, that the ALJ appeared to have considered Plaintiff's interactions with his family members and with his therapist as relevant evidence of his ability to interact with others, but section 12.00E2 makes clear that this area involves "supervisors, co-workers, and the public." Relationships with family and medical personnel are not mentioned and do not appear to fall within the scope of the definition in section 12.00E2. There is no dispute that Plaintiff has never worked. Plaintiff points to the evidence that he has no friends with whom he interacts outside of video games: 1) consultative psychological examiner Dr. Lazarus stated: "he does not relate with individuals face to face" (Tr. 305); and 2) psychological examiner Dr. London reported that his capacity for social interaction was impaired (Tr. 409). When the guidance found in Listing 12.00E2 is applied to the evidence of record, a more severe level of impairment might be found.

Similarly, as already discussed, the ALJ appears to have overlooked Listing 12.00E4, which explains that the area, "adapt or manage oneself," deals with functioning in a work setting, not at home. Given that it is undisputed that Plaintiff has never worked, any inferences about his capacity to adapt and manage himself in a work setting will need to be carefully drawn.

In sum, on remand, careful application of the criteria stated in the Listings, particularly in Listing 12.05B, to the evidence might lead to a different disability determination.

For these reasons, this Court finds that the Commissioner's decision is not supported by substantial evidence.   The Commissioner's decision is vacated, and the case is remanded to the Commissioner for further proceedings in accordance with this Opinion.

    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: June 1, 2020

9